**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JESSIE WAYNE PILLETTE,

      Petitioner,                   Civil No. 2:06-14511
                                     HONORABLE ARTHUR J. TARNOW

v.                              UNITED STATES DISTRICT JUDGE

MARY BERGHUIS,

      Respondent,

_____/

**OPINION AND ORDER GRANTING THE
PETITION FOR WRIT OF HABEAS CORPUS**

      Jessie Wayne Pillette, ("Petitioner"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, petitioner challenges his conviction by a jury for assault with intent to commit murder, M.C.L.A. 750.83; two counts of felonious assault, M.C.L.A. 750.82; and three counts of carrying a weapon with unlawful intent, M.C.L.A. 750.226. Because petitioner was denied the effective assistance of trial counsel by counsel's failure to call favorable witnesses, the petition for writ of habeas corpus is conditionally granted.

**I. Background**

      On August 31, 2003, petitioner was involved in an altercation with several other persons at the trailer park where he resided. It was uncontested that petitioner was badly beaten by several persons. Prosecution witnesses claim that at some point petitioner retrieved a .20 caliber shotgun and a .22 caliber rifle from his trailer.

      Quavis Roby claimed that when he went to petitioner's trailer, petitioner pointed the shotgun at him. Roby, however, was unable to tell whether petitioner tried to pull

1

*Pillette v. Berghuis,* U.S.D.C. 06-14511

the trigger.  Roby, in fact, conceded that he had "no clue" whether petitioner's fingers were even on the trigger.

Shannon Brower, whose preliminary examination testimony was admitted into evidence after she had been declared unavailable to testify at the trial, indicated that she had heard an audible "click" at the time that the shotgun was pointed at Roby.  On cross-examination, Brower, admitted that she assumed that the "click" was from the trigger being pulled, but acknowledged that the sound could have come from a rock or something else.  Brower further admitted that she did not actually see petitioner pull the trigger.

After pointing the weapon at Roby, petitioner went outside and purportedly pointed a .22 rifle at Melissa Siirila and told her he was going to kill her.  Petitioner, however, did not shoot her.  Several witnesses testified that they heard further gunshots, which they believe came from a .22 weapon.

Deputy Nicholas F. Cavanaugh later spoke to petitioner at the hospital, where he was taken after the incident.  Cavanaugh described petitioner as "being highly intoxicated" and "irate", with contusions to his face.  After being advised of his *Miranda* rights, petitioner told the detective that he had been jumped.  He denied that he had a rifle.  He said that no shots were fired.

Petitioner testified in his own behalf.  Petitioner testified that several other persons began kicking and hitting him, after he got into an altercation with Dennis Washington.  Quavis Roby hit petitioner in the side of his eye with a rock, before being pulled off of petitioner by petitioner's roommate.  Washington began choking petitioner

2

*Pillette v. Berghuis,* U.S.D.C. 06-14511

from behind.  Petitioner was able to break free and grabbed a baseball bat.  Petitioner

then went to the trailer and grabbed the keys to lock it.  Petitioner testified that he

almost passed out when he got to the trailer.  Petitioner then heard windows breaking,

which caused him to go to the gun cabinet and retrieve the .20 gauge shotgun and load

it.  Petitioner grabbed the .22 caliber rifle, but did not have time to load it.

Petitioner said that he went outside the trailer and fired a warning shot.

Petitioner heard a number of people screaming and noticed Kuzia standing in front of

him with a baseball bat.  Petitioner claimed that he put the gun back in the house and

went over to Melissa Siirila to see if she was alright.  Petitioner then went into the house

to load the .22 rifle and brought it back in case the other men came back.  Petitioner

observed Kuzia running down the street hitting trailers with the bat.  Petitioner loaded

the gun to capacity and placed it back into the closet.

The police later responded to petitioner's trailer.  Petitioner denied making a

statement to the police, other than to tell them that he denied pointing or shooting a gun

at anyone.  Petitioner only fired one warning shot.  Petitioner heard other shots being

fired and later discovered that another .22 caliber firearm had been taken from his

trailer.  Petitioner denied that Roby ever came into the house to speak to him and

further denied pointing a gun at Siirila.

Petitioner's conviction was affirmed on appeal. *People v. Pillette,* No. 254587

(Mich.Ct.App. June 14, 2005); *reconsideration den.* August 9, 2005; *lv. den.* 474 Mich.

1068; 711 N.W. 2d 305 (2006).

3

*Pillette v. Berghuis,* U.S.D.C. 06-14511

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Pillette,* No. 03-2953-FC (Otsego County Circuit Court, May 8, 2006). Petitioner then filed the instant habeas petition, which was held in abeyance while he completed post-conviction relief. *Pillette v. Berghuis,* No. 2006 WL 3084164 (E.D. Mich. October 27, 2006). Petitioner's subsequent post-conviction appeals were denied. *People v. Pillette,* No. 270513 (Mich.Ct.App. November 28, 2006); *lv. den.* 478 Mich. 866; 731 N.W. 2d 751 (2007). On June 19, 2007, this Court granted petitioner's motion to reopen the habeas petition.

Petitioner seeks the issuance of a writ of habeas corpus on the following grounds:

> I. THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL WHEN HIS ATTORNEY, AS A RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL, FAILED TO OBJECT TO THE OFFICER'S TESTIMONY WHEN THE WITNESS WAS NOT QUALIFIED AS AN EXPERT BUT WAS ALLOWED TO TESTIFY ABOUT ISSUES WHICH AN EXPERT SHOULD HAVE TESTIFIED REGARDING BALLISTICS AND WEAPONS.

> II. PROSECUTION VIOLATED DEFENDANT'S FIFTH AMENDMENT RIGHT WHEN POST-ARREST SILENCE WAS USED AGAINST HIM AT TRIAL.

> III. INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO CALL WITNESSES.

> IV. VIOLATION OF SEQUESTRATION ORDER.

> V. VIOLATION OF RIGHT TO CONFRONTATION.

> VI.  DEFENDANT MUST BE ALLOWED LEAVE TO RAISE ISSUE OF PROSECUTION'S FAILURE TO PRESENT SUFFICIENT EVIDENCE FOR COUNT ONE INTENT TO MURDER TO SATISFY THE DUE PROCESS STANDARD OF GUILT BEYOND A REASONABLE DOUBT WHERE

4

*Pillette v. Berghuis,* U.S.D.C. 06-14511

APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO RAISE ISSUE.

VII. DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE THE PROSECUTION FAILED TO PRESENT SUFFICIENT AMOUNT OF EVIDENCE FOR COUNT ONE INTENT TO MURDER TO SATISFY THE DUE PROCESS STANDARD OF GUILT BEYOND A REASONABLE DOUBT.

VIII. THE COURT MUST WAIVE THE GOOD CAUSE REQUIREMENT BECAUSE OF EXTERNAL FACTORS PREVENTED COUNSEL RAISING ISSUE ON APPEAL OF NEWLY DISCOVERED EVIDENCE MADE AVAILABLE TO THE DEFENDANT AFTER APPELLATE COUNSEL SUBMITTED DEFENDANT'S BRIEF IN THE COURT OF APPEALS.

On July 28, 2008, this Court ordered an evidentiary hearing on petitioner's third ineffective assistance of counsel claim and appointed counsel to represent petitioner. The Court also ordered counsel to brief petitioner's claim of prosecutorial misconduct. *Pillette v. Berghuis,* No. 2008 WL 2945941(E.D. Mich. July 28, 2008).

An evidentiary hearing was conducted on petitioner's third ineffective assistance of counsel claim on March 10, 2009, after which the Court directed the parties to submit post-hearing briefs. The parties further agreed to stipulate to the admission of Mary Barrette's deposition testimony. [1]

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[1]  Petitioner's Hearing Exhibit 12.

5

*Pillette v. Berghuis,* U.S.D.C. 06-14511

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A.  Ineffective assistance of counsel for failure to call witnesses.**

For purposes of clarity, the Court will first discuss petitioner's third ineffective assistance of counsel claim, because this is the claim that the Court is granting petitioner relief on. Petitioner alleges that his trial counsel was ineffective for failing to call witnesses whom petitioner contends would have established that petitioner was innocent of the charges. Petitioner contends that these witnesses would support his

*Pillette v. Berghuis,* U.S.D.C. 06-14511

testimony that he never pointed a weapon at Roby, Siriila, or any other person and that he only fired one gunshot into the air.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

An evidentiary hearing was conducted on petitioner's claim on March 10, 2009. Prior to the hearing, respondent again renewed its objection to the evidentiary hearing. Respondent's objection is untenable.  As discussed by this Court in greater detail in its initial order granting petitioner an evidentiary hearing, petitioner exercised due diligence in attempting to obtain a hearing on these claims in the Michigan courts [DE #18].

*Pillette v. Berghuis,* U.S.D.C. 06-14511

Petitioner initially brought his complaint about the alleged ineffectiveness of his trial counsel to the trial court at the time of sentencing, but the trial court ignored his complaint. Petitioner then raised these claims in his *pro se* supplemental brief on appeal, in his motion for reconsideration, and in his application for leave to appeal to the Michigan Supreme Court. This Court concluded that petitioner had exercised due diligence, for purposes of obtaining an evidentiary hearing on his ineffective assistance of counsel claims in the federal court. *Pillette,* 2008 WL 2945941, Slip. Op. at * 6-7. The Court will overrule respondent's objection.

This Court further concludes that petitioner is entitled to *de novo* review of his ineffective assistance of counsel claims. When a state court fails to adjudicate a habeas petitioner's claim on the merits, federal habeas review is not subject to the deferential standard contained in § 2254(d) and a federal court is required to review that claim *de novo. See Cone v. Bell,* 129 S. Ct. 1769, 1784 (2009). In light of the fact that the state courts failed to conduct an evidentiary hearing on petitioner's ineffective counsel claims and limited their review to "mistakes apparent on the record," petitioner's ineffective assistance of counsel claims were never truly adjudicated on the merits, for purposes of applying the deferential standard of review contained in § 2254(d). *See Brown v. Smith,* 551 F.3d 424, 428-29 (6th Cir. 2008). Accordingly, petitioner is entitled to *de novo* review of his ineffective assistance of counsel claims.

Petitioner initially claims that his counsel was ineffective for failing to call Anthony Kuzia, Mary Barrette, Enrique Duarte, Lacey Duckett and

8

*Pillette v. Berghuis,* U.S.D.C. 06-14511

Megan Kimbler to testify.   Petitioner claims that these witnesses would have supported his testimony that he never pointed a weapon at Roby, Siirila, or any other person, and that he only fired one gunshot into the air.

Petitioner testified at the evidentiary hearing that he had been assured by his counsel that these witnesses had been subpoenaed to testify at trial.  It was not until the prosecution had rested and he was called to the witness stand that petitioner became aware that there were no witnesses to testify on his behalf.        Mary Barrette, Enrique Duarte, Lacey Duckett and Megan Kimbler were on the prosecutor's witness list.  All four persons had provided statements to the police that were included in the discovery materials provided to petitioner's trial counsel and were also included in trial counsel's file.  Each of the written statements for these potential witnesses includes their address and telephone

numbers.  Each of these people spoke to police officers at the scene on the night of the incident, but were not asked to give written statements until September 2, 2003 (except for Anthony Kuzia, whose statement is dated September 1, 2003).

The only potential witness from this group who could be located for the evidentiary hearing is Mary Ann Barrette, who testified by deposition on March 27, 2009.

Barrette indicated that she would have corroborated petitioner's testimony that he did not point a gun at Melissa Siirila.  Siirila testified at the preliminary examination and at trial that the petitioner came up behind her and he grabbed her shoulder, before she fell to the ground.  Siirila testified that petitioner pointed a gun to her face and

9

*Pillette v. Berghuis,* U.S.D.C. 06-14511

threatened to kill or shoot her.  Although it is not clear in Ms. Siirila's testimony either

time, in her written statement to the police, Siirila described how she had gone over to

Mary Barrette, who was on the ground, and that petitioner came over to her, put a gun

in her face, and told her he was going to kill her.  Barrette's testimony contradicted

Siirila's on this point.  Moreover, it was known early in the case, from the summary of

Barrette's information in a memorandum written by Officer Crane that Barrette's

version of the events supported petitioner's defense as to the assault against Siirila,

because Barrette was with Siirila at the time that it occurred and did not witness any

assault against Siirila.  In addition, Barrette testified that she heard only one gunshot.

Finally, Barrette testified, consistent with her statement to Officer Crane, that she never

witnessed petitioner with a gun or an assault on Siirila.  Barrette added further detail

supporting petitioner's testimony that he had not pointed a gun at Siirila in that,

petitioner, who had come over to Barrette while she was crouching on the ground, was

already gone by the time Siirila came over to Barrette.  Barrette's testimony on this

point would contradict Siirila's claim that petitioner's threat to kill her occurred when she

was with Barrette.

Barrette testified that she never had any contact with petitioner' s trial counsel,

Mr. Deamud.  Barrette was contacted by the prosecutor, who had subpoenaed her for

trial.  Barrette appeared at the courthouse on the day of trial, and after waiting about

two hours, talked to the prosecutor and Deputy Cavanaugh in the courtroom.  Barrette

was asked whether or not her testimony would be the same as her previous interviews,

and after telling them that she had nothing new to add, she was excused.

*Pillette v. Berghuis,* U.S.D.C. 06-14511

Petitioner's trial counsel did not remember whether Mary Barrette was at trial or even much detail as to whom he interviewed.

Lacey Duckett was also not called to testify for the defense at trial. She provided a written statement and was later interviewed by Officer Glenn Crane. In her written statement, Duckett told Crane that she had dated petitioner for approximately one month. Duckett witnessed the fight between Washington and petitioner. Duckett told Crane that petitioner came outside with a long gun and fired it in the air, then went back inside. Duckett indicated that this was after the fight and the windows being broken. No one else was there when the gun was fired. Duckett and Barrette were walking from Kuzia's trailer back to their own trailer when Duckett heard one shot, turned around, and observed petitioner holding a long gun. Petitioner was standing in front of Kuzia's trailer, in front of the broken windows. After the alleged assault on Siirila, Duckett was outside to the west of her trailer talking with petitioner. Siirila was screaming to Mary, shouting "what the f[***] are you screaming about, you're only making matters worse." Duckett did not see anyone with guns, other than when petitioner fired one shot "in the air". Duckett observed Anthony Kuzia with a baseball bat, but no firearms, as he was walking down the road. Duckett also supported petitioner's testimony that petitioner had been kicked, hit, and beaten with rocks by several men.

According to petitioner's trial counsel, Duckett was not called because she was Pillette's girlfriend.

11

*Pillette v. Berghuis,* U.S.D.C. 06-14511

Duckett would also have supported Barrette's and petitioner's testimony as to one shot being fired. Duckett also told the police that petitioner was standing with her at Mary Barrette's back door. Combined with Barrette's testimony that after the fight, she and Duckett returned to her home, Duckett's testimony would have contradicted Siirila's testimony that petitioner had threatened to kill her

Megan Kimbler and Rick Duarte were also important to petitioner's defense to rebut the prosecution witnesses. Neither of their statements mention seeing petitioner with a gun, only that they heard one gunshot, then the police arriving. In addition, Kimbler described witnessing petitioner in a fight, a few minutes later windows were getting broken, and then hearing one gunshot. In addition, Kimbler was present at the times testified to by Shannon Brower, when Brower heard a noise that could have been a trigger click "or anything". At the time, Brower was standing outside with Rick Duarte and Charles Bell, while Kimbler was in the doorway. Kimbler's testimony would have contradicted that of Brower, in that Kimbler could have testified that Brower was not in a position to hear what she testified to, because Brower was in Kimbler's house the entire time without an opportunity to observe what she testified to. Furthermore, Brower's testimony does not match her statement, in which she says that she saw petitioner in the street with a .22 along with Anthony Kuzia who was handing petitioner bullets. However, in her preliminary examination testimony, she stated that she did not see anyone firing a weapon, and never actually saw petitioner point the shotgun at Roby, having seen only the barrel of the gun, with both Anthony Kuzia and petitioner inside.

12

*Pillette v. Berghuis,* U.S.D.C. 06-14511

Petitioner's trial counsel testified that it was his practice at the time to rely on the prosecutor to locate the witnesses in this type of case.  He has vague recollections that they were having difficulty locating a number of them.  Counsel agreed that there were some witnesses who would have supported petitioner's version of the events, but he had questions as to some of those witnesses' credibility.  Although counsel claimed that he talked to some of these witnesses, he did not recall to whom.  His file no longer retained any notes of any such interviews.  Although counsel testified that he generally felt that presenting redundant witnesses at trial would irritate a jury and thus be counterproductive, he did not indicate that any of petitioner's potential witnesses would have been redundant.

Without any witnesses to support his testimony, petitioner was defenseless to the following cross examination:

> Q: Now you've sat through all of the testimony yesterday and today, right?
> A: Yes, sir.
> Q: Did any other witness say anything like what you've just said?
> A: Other people did, but not people that were called as witnesses.
> Q: Okay. Did anybody else, in court, say anything like a warning shot was fired?
> A: In court, no.
> Trial Tr., 1/21/04, pp. 192-93.

When defense counsel is made aware that a potential witness may provide testimony that is beneficial to the defense, counsel's failure to interview the potential witness is ineffective. *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007); *See also Davis v. Booker,* 594 F Supp. 2d 802, 816 (E.D. Mich. 2009).  "The failure to interview key defense witnesses is objectively unreasonable" under *Strickland*.

13

*Pillette v. Berghuis,* U.S.D.C. 06-14511

*Poindexter v. Booker*, 301 Fed.Appx. 522, 528 (6th Cir. 2008). "Constitutionally effective counsel must develop trial strategy in the true sense-not what bears a false label of 'strategy'-based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez*, 490 F.3d at 489.  Finally, "[W]here counsel fails to investigate and interview promising witnesses, and therefore 'ha[s] no reason to believe they would not be valuable in securing [defendant's] release', counsel's inaction constitutes negligence, not trial strategy." *Workman v. Tate*, 957 F.2d 1339, 1345 (6th Cir. 1992)(internal citations omitted).

In the present case, although petitioner's trial counsel had a vague memory about speaking with some of these witnesses, he was unable to remember which of the witnesses he spoke with and his file no longer retained any notes of any such interviews.  In fact, other than perhaps talking to "some" witnesses, there is no indication contained in trial counsel's file that any pre-trial investigation was done other than to visit petitioner in jail.  Petitioner's trial counsel has failed to present adequate evidence that he ever interviewed any of these potential witnesses.  Where a defense counsel fails to investigate and interview promising witnesses, and therefore has no reason to believe they would not be valuable in securing a defendant's release, counsel's inaction constitutes negligence, not trial strategy, for purpose of analyzing an ineffective assistance of counsel claim. *Workman,* 957 F. 2d at 1345.  This Court concludes that counsel was deficient for failing to adequately investigate or interview these witnesses.

14

*Pillette v. Berghuis,* U.S.D.C. 06-14511

This Court further concludes that petitioner was prejudiced by counsel's failure to interview or call these witnesses to testify at trial. Because these witnesses would have corroborated petitioner's testimony that he never pointed a weapon at Roby, Siirila, or any other person and that he only fired one gunshot into the air as a warning, counsel's failure to investigate and to produce at least some of these witnesses at petitioner's trial to corroborate petitioner's testimony was prejudicial to petitioner. *See e.g. English v. Romanowski,* 589 F. Supp.2d 893, 902 (E.D. Mich. 2008). Having undertaken such a *de novo* review of petitioner's claim, and having considered the statements of the various proposed witnesses, as well as Barrette's deposition testimony, the Court finds that the testimony of these witnesses might well have influenced the jury's appraisal of petitioner's guilt. The likelihood of a different result had their testimony been presented is sufficient to undermine the Court's confidence in the outcome at trial. *Id.* Moreover, even though a finder of fact could have discredited the potential defense witnesses based on factors such as bias and inconsistencies in their respective stories, there certainly remains a reasonable probability that a finder of fact would not have. Petitioner's case was therefore prejudiced by counsel's failure to call these potential defense witnesses who would have helped to corroborate his defense. *See Ramonez*, 490 F.3d at 491.

Petitioner also contends that counsel was ineffective for failing to present evidence that a .22 caliber gun was stolen from petitioner's house on the night in question and that some of the witnesses to the altercation had been involved in the past thefts or illegal discharges of firearms in the same trailer park where the

15

*Pillette v. Berghuis,* U.S.D.C. 06-14511

altercation between petitioner and the other persons took place.  Petitioner contends

that this evidence would establish that another person was responsible for firing the .22

caliber bullets that were found in the trailer park on the night in question.  Petitioner

further contends that this could have bolstered his self-defense claim.

Petitioner testified at trial that his .22 gun was stolen from his trailer on the night

in question.  Counsel testified that petitioner reported the .22 caliber rifle missing on

December 22, 2003, some three months after the preliminary examination in this case.

Counsel further noted that in the report, the theft was alleged to have taken place

between August 1, 2003 and September 30, 2003.

The failure to investigate a police report that would corroborate a defendant's

testimony constitutes the ineffective assistance of counsel. *See Espinal v. Bennett,* 588

F. Supp. 2d 388, 401 (E.D.N.Y. 2008).  In the present case.  The police report about

the stolen weapon could have provided corroboration to petitioner's story that his .22

caliber gun was stolen on the night in question, so as to support his theory that the

other .22 caliber bullets that were found in the trailer park were fired by someone else,

not him.  Counsel was therefore deficient for failing to present the evidence of this

police report at trial. *Id.*  Moreover, because of the credibility issues presented in this

case, the failure to present the evidence of this police report was prejudicial to

petitioner, so as to entitle him to habeas relief. *Id.* at 402.

Petitioner also contends that his counsel was ineffective for failing to investigate

and to present evidence that some of the participants in the altercation had previously

16

*Pillette v. Berghuis,* U.S.D.C. 06-14511

been involved in the theft or discharge of weapons in the same trailer park where the alleged assaults took place.

In support of his claim, petitioner points to a police report and related case disposition documents resulting from a June 25, 2002 incident, in which Quavis Roby was in possession of a stolen .32 caliber handgun, which he brandished at the trailer park and later discharged from the roof of his girlfriend's automobile. Petitioner also points a 2003 conviction against against Roby for a conviction of malicious destruction of property under $200.

Trial counsel had this information in his file at the time of trial and did not use it to impeach or cross-examine Roby.  Counsel did not know why he did not question Roby about these incidents.  Although counsel later testified that he did not recall seeing the police report from the 2002 incident prior to the evidentiary hearing, according to the documents that counsel produced for the evidentiary hearing, it was in his client file.

Petitioner testified that the police report from the 2002 incident and the 2003 sentencing order relating to Roby's malicious destruction of property conviction were among the materials provided to counsel during a jail visit that had been provided to him by Officer John Dye.

Petitioner claims that this information could have been used to cross-examine Roby to show his past gun possession and destruction of property in support of petitioner's claim of self-defense.

17

*Pillette v. Berghuis,* U.S.D.C. 06-14511

The failure to present evidence of an alleged victim's character for violence to corroborate a defendant's defense of self-defense can amount to the ineffective assistance of counsel. *See Smith v. Dretke,* 417 F.3d 438, 443-44 (5th Cir. 2005). Petitioner's counsel failed to offer any reasons for failing to offer evidence of Roby's past history of possessing and discharging firearms in the same trailer park and damaging property.  This evidence could have been used to bolster petitioner's defense that he acted in self-defense, as well as his defense that someone else fired the additional bullets that were recovered from the trailer park.  Moreover, contrary to defense counsel's belief that this evidence was inadmissible, evidence of any "pertinent trait" of a victim is admissible pursuant to M.R.E. 404(a)(2). *People v. Anderson,* 147 Mich. App. 789, 793; 383 N.W.2d 186 (1985).  This Court concludes that trial counsel was ineffective for failing to present this evidence and that petitioner was prejudiced by this deficiency.

Accordingly, this Court concludes that petitioner is entitled to habeas relief on the ineffective assistance of counsel claims contained in his third claim.

Because the Court is granting petitioner a writ of habeas corpus on these claims, the Court will only briefly address petitioner's remaining claims. *See Brown v. Palmer,* 358 F. Supp. 2d 648, 656 (E.D. Mich. 2005).

*Pillette v. Berghuis,* U.S.D.C. 06-14511

**B.  The defendant was denied his due process right to a fair trial when his attorney, as a result of ineffective of counsel, failed to object to the officer's testimony when the witness was not qualified as an expert but was allowed to testify about issues which an expert should have testified regarding ballistics and weapons.**

Petitioner contends that counsel was ineffective for failing to object to Deputy Cavanaugh's expert testimony concerning ballistics issues even though he was never qualified as an expert in ballistics or firearms.

Deputy Cavanaugh could most likely have been qualified to give expert opinion testimony pursuant to M.R.E. 702, because he had technical or specialized knowledge concerning firearms.  Cavanaugh testified to being a State Certified Firearms Instructor for approximately four years, taught at a police academy, and had advanced law enforcement training firing multiple rounds with both rifles and shotguns.  Because petitioner has failed to show a reasonable probability that Cavanaugh's "expert" testimony would have been excluded had an objection been made, petitioner is not entitled to habeas relief on his first claim. *See U.S. v. Catlett,* 97 F. 3d 565, 572-73 (D.C. Cir. 1996).

**C.  Prosecution violated petitioner's Fifth Amendment right by using his post-arrest silence against him at trial.**

Petitioner contends that the prosecutor impermissibly used his *post-Miranda* silence against him and that counsel was ineffective for failing to object to the prosecutor's questions and comments on petitioner's silence.

Respondent responds that petitioner's claim that the prosecutor impermissibly used his post-arrest silence against him is procedurally defaulted, because petitioner

19

*Pillette v. Berghuis,* U.S.D.C. 06-14511

failed to object at trial.  Petitioner claims that his trial counsel was ineffective for failing to object to the prosecutor's questions and remarks.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *See also Gravley v. Mills*, 87 F. 3d 779, 786 (6th Cir. 1996).

Petitioner has failed to show that the prosecutor impermissibly used his post-*Miranda* silence against him.  Deputy Cavanaugh testified that he advised petitioner of his *Miranda* rights and that petitioner was willing to speak with him. Deputy Cavanaugh testified that petitioner became "uncooperative" at a point, but went on to explain that when he described petitioner as being uncooperative, he meant that petitioner was making racial slurs, not that he was invoking a silence privilege.

During questioning from the prosecutor, petitioner initially testified that "I didn't tell the police anything."  However, upon further questioning, petitioner acknowledged that he made several statements to the police, including several racially derogatory remarks.  Petitioner also indicated that he told Cavanaugh that "he didn't point a gun at nobody and I didn't shoot nobody."  Petitioner testified, upon further questioning from

20

*Pillette v. Berghuis,* U.S.D.C. 06-14511

the prosecution, that Deputy Cavanaugh told him what he thought happened and that

defendant then said "Well, what if I don't make a statement 'till I have a lawyer?".

Subsequently, defendant testified that "he refused to give the police a statement before

I had a lawyer.... Even now-I have never given them a statement at all."

Petitioner is not entitled to habeas relief on this claim.  The Supreme Court's

holding in *Doyle* "has no application unless the defendant has remained silent and

could be considered to have done so in reliance on the implied assurances of the

Miranda warnings." *United States v. Crowder,* 719 F. 2d 166, 172 (6th Cir. 1983).  In the

present case, Deputy Cavanaugh testified that petitioner agreed to speak with him after

being advised of his Fifth Amendment rights.  Although petitioner initially testified that

he remained silent, he subsequently acknowledged making several statements to

Deputy Cavanaugh.  Petitioner has failed to show that he invoked his Fifth Amendment

right to silence or that it was used against him.

Further, although petitioner subsequently testified that he refused to give a

statement to the police before he spoke with a lawyer, this contradicted his earlier

testimony that he made statements to the police.  The prosecutor's questions were an

attempt to clarify this contradiction.  The Supreme Court's holding in *Doyle* does no

apply to cross-examination that merely inquires into prior inconsistent statements.

Such questioning makes no unfair use of silence because a defendant who voluntarily

speaks after receiving *Miranda* warnings has not been induced to remain silent.  As to

the subject matter of his statements, the defendant has not remained silent at all.

*Anderson v. Charles*, 447 U.S. 404, 408 (1980).

21

*Pillette v. Berghuis,* U.S.D.C. 06-14511

Because the prosecutor's questions and comments regarding petitioner's post-arrest silence were not improper, counsel's failure to object to references to petitioner's post-arrest silence was not ineffective assistance of counsel. *See Solomon v. Kemp*, 735 F. 2d 395, 403 (11th Cir. 1984). Petitioner is not entitled to habeas relief on his second claim.

### D. Violation of sequestration order.

Petitioner claims that the trial court failed to sequester a prosecution witness. A trial court's failure to sequester witnesses does not amount to the deprivation of a constitutional right and therefore cannot form the basis of federal habeas relief. *Mathis v. Wainwright*, 351 F. 2d 489, 489 (5th Cir. 1965); *Lemaster v. Ohio,* 119 F. Supp. 2d 754, 776 (S.D.Ohio 2000). Petitioner is not entitled to habeas relief on his fourth claim.

### E. Violation of Right to Confrontation.

Petitioner argues that his Sixth Amendment right to confrontation was violated when the trial court permitted Brower's preliminary examination testimony to be read into the record after the prosecutor was unable to obtain her presence at trial.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right.....to be confronted with the witnesses against him..." U.S. Const. amend. VI. The Sixth Amendment protections are not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his or her inability to confront the declarant at trial. *See Maryland v. Craig*, 497 U.S. 836, 847-48 (1990).

*Pillette v. Berghuis,* U.S.D.C. 06-14511

When prosecutors seek to admit a nontestifying witness' preliminary hearing testimony, the Confrontation Clause requires two things: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities have made a good-faith effort to obtain the declarant's presence at trial, and, second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. *McCandless v. Vaughn*, 172 F. 3d 255, 265 (3rd Cir. 1999).

The record establishes that the prosecutor made diligent good-faith efforts to obtain Brower's presence for trial.  Approximately two weeks prior to trial, Deputy Cavanaugh, in order to serve the subpoena on Brower, visited the apartment where she lived at the time of the incident, but discovered that she had moved away with out leaving a forwarding address.  Deputy Cavanaugh spoke to other witnesses, who were her friends, and found out that Brower had moved to Howell, Michigan, at which time he did a LEIN check.  The LEIN check revealed an address in Vanderbilt, Michigan. Cavanaugh went to the address, but discovered that it no longer existed because it was a trailer that had moved.  Sergeant Crane spoke with a postmaster who gave a post office box, but had no physical address.  Deputy Cavanaugh then conducted further computer searches though ASIX, a reporting system, to see if any police contact had been made with her.  Sergeant Crane obtained an address and phone number for Brower's father in Hillman, Michigan, and called and left a message for him, which was not returned.

23

*Pillette v. Berghuis,* U.S.D.C. 06-14511

In light of the fact that the officers in this case attempted to subpoena Brower at her last address, pursued leads concerning forwarding addresses, spoke to her friends and family members, and attempted to determine whether she had any contact with law enforcement, the Court concludes that the prosecution and law enforcement made a good faith effort to locate Brower and present her at trial. *See Winn v. Renico,* 175 Fed.Appx. 728, 739 (6th Cir. 2006).

In addition, Brower's former preliminary examination testimony bore adequate indicia of reliability because it was made under oath, petitioner and his counsel were present, and the witness was subject to cross-examination. *California v. Green*, 399 U.S. 149, 165-66 (1970); *Eastham v. Johnson*, 338 F. Supp. 1278, 1280 (E.D. Mich. 1972). Therefore, the admission of the preliminary examination testimony at petitioner's trial did not violate his right to confrontation.

**F. Defendant must be allowed leave to raise issue of prosecution's failure to present sufficient evidence for count one intent to murder to satisfy the due process standard of guilt beyond a reasonable doubt where appellate counsel rendered ineffective assistance of counsel for failure to raise issue.**
**Defendant's conviction must be reversed because the prosecution failed to present sufficient amount of evidence for count one intent to murder to satisfy the due process standard of guilt beyond a reasonable doubt.**

In his sixth and seventh claims, petitioner claims there was insufficient evidence to support his conviction for assault with intent to murder. Petitioner further claims that appellate counsel was ineffective for failing to raise the sufficiency of evidence claim on direct appeal.

24

*Pillette v. Berghuis,* U.S.D.C. 06-14511

Respondent contends that petitioner's claims are procedurally defaulted, because he raised them for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise these issues in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

Petitioner claims that his appellate counsel was ineffective for failing to raise his claims in his appeal of right.  Ineffective assistance of counsel may establish cause for procedural default. *Edwards*, 529 U.S. at 451-52.  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of these claim. *See Cameron,* 348 F. Supp. 2d at 836.  Additionally, petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004).

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001).  Moreover, the *Jackson* standard must be applied "with explicit reference to the

25

*Pillette v. Berghuis,* U.S.D.C. 06-14511

substantive elements of the criminal offense as defined by state law." *Adams v. Smith,*
280 F. Supp. 2d 704, 714 (E.D. Mich. 2003) (*quoting Jackson,* 443 U.S. at 324, n. 16).

Under Michigan law, the elements of assault with intent to commit murder in
Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful,
would make the killing murder. *See Warren v. Smith,* 161 F. 3d 358, 361 (6th Cir.
1998); *See also Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001).  The
intent to kill element does not equate with murder. *Warren,* 161 F. 3d at 361 (citing
*People v. Taylor*, 422 Mich. 554; 375 N.W.2d 1, 7 (1985)).  Thus, an intent to kill for
purposes of this offense may not be proven by an intent to inflict great bodily harm or a
wanton and wilful disregard of the likelihood that the natural tendency of the acts will
likely cause death or great bodily harm. *Id.*  Therefore, a conviction for assault with
intent to commit murder must be premised upon a defendant's specific intent to kill.
*Steele,* 157 F. Supp. 2d at 740 (citing *People v. Edwards*, 171 Mich.App. 613, 620; 431
N.W. 2d 83 (1988)).  The intent to kill, for purposes of the crime of assault with intent to
commit murder, need not be proved by direct, positive, or independent evidence, and
the trier of fact may draw reasonable inferences from the facts and evidence in
determining the existence of an intent to kill. *See Taylor*, 422 Mich. at 567-568.  In
determining the defendant's intent, a court may take into account "[t]he nature of the
defendant's acts constituting the assault; the temper or disposition of mind with which
they were apparently performed, whether the instrument and means used were
naturally adapted to produce death, his conduct and declarations prior to, at the time,
and after the assault, and all other circumstances calculated to throw light upon the

26

*Pillette v. Berghuis,* U.S.D.C. 06-14511

intention with which the assault was made." *Id.* at 568 *(quoting Roberts v. People*, 19 Mich. 401, 415-16 (1870)).  The use of a lethal weapon will support an inference of an intent to kill. *Steele,* 157 F. Supp. 2d at 740; *People v. Ray*, 56 Mich. App. 610, 615; 224 N.W. 2d 735 (1974).

Quavis Roby claimed that petitioner pointed the shotgun at him, although he was unable to determine whether petitioner tried to pull the trigger.  Shannon Brower, however, indicated that she had heard an audible "click" at the time that the shotgun was pointed at Roby.  From this testimony, a jury could infer that petitioner attempted to pull the trigger.  After pointing the weapon at Roby, petitioner went outside and purportedly pointed a .22 rifle at Melissa Siirila and told her he was going to kill her. Several witnesses testified that they heard further gunshots, which they believe came from a .22 weapon.  These actions could lead a rational trier of fact to conclude that petitioner had intended to kill someone.  Finally, Deputy Cavanaugh testified that the shell that was removed from the firing chamber of the shotgun bore a distinctive mark that was consistent with a firing pin.  This would also support an inference that petitioner intended to pull the trigger.

The evidence, when viewed in a light most favorable to the prosecution, could lead a rational trier of fact to conclude that petitioner intended to kill Roby when he pointed the gun at him and attempted to pull the trigger.

In light of the fact that there was sufficient evidence that petitioner intended to kill Roby, appellate counsel was not ineffective for failing to raise this claim on his appeal of right.

27

*Pillette v. Berghuis,* U.S.D.C. 06-14511

**E.  The court must waive the good cause requirement because of external factors presented counsel raising issue on appeal of newly discovered evidence made available to the defendant after appellate counsel submitted the defendant's brief in the Court of Appeals.**

Petitioner lastly alleges that the Michigan courts erred in failing to waive the good cause requirement under M.C.R. 6.508(D)(3), in light of the fact that he had newly discovered evidence in support of his claims.

A federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *Greer v. Mitchell,* 264 F. 3d 663, 681 (6th Cir. 2001).  Any error in the application of Michigan's post-conviction statute is an error of state law that would not be cognizable in federal habeas review. *See Simpson v. Jones,* 238 F. 3d 399, 406-407 (6th Cir. 2000); *See also Newman v. Metrish*, 492 F. Supp. 2d 721, 735 (E.D. Mich. 2007); *aff'd* 543 F. 3d 793 (6th Cir. 2008).

## IV.  <u>ORDER</u>

**IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED.  UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.**

<u>S/Arthur J. Tarnow</u>
Arthur J. Tarnow
United States District Judge

Dated:  June 19, 2009

28

*Pillette v. Berghuis,* U.S.D.C. 06-14511

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 19, 2009, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary